WILLIAM HUME *vs.* GEORGE WALKER.

Essex. November 6, 1901. — June 17, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Equity Jurisdiction. Partnership.*

A bill in equity will not lie to settle the rights of the parties under an agreement of sale by which one of two partners sold out to the other all his interest in the partnership property at the prices named in a certain invoice, if no mistake in the settling of the partnership accounts is alleged and no reformation of the contract is sought.

BILL IN EQUITY, filed January 18, 1901, for an accounting between the plaintiff and the defendant, former partners, to determine their respective rights under an agreement by which the defendant sold out all his half interest in the Hume Carriage Company to the plaintiff at the prices named in a certain invoice.

The defendant filed an answer containing a demurrer, averring, that there was no equity in the plaintiff's bill, and that all matters therein averred were matters of common law.

In the Superior Court *Maynard,* J. made a decree sustaining the demurrer and dismissing the bill.

The bill alleged, that the plaintiff and the defendant had for ten years carried on the business of manufacturing carriages at Amesbury, as copartners, doing business under the name of the Hume Carriage Company, and that on October 6, 1898, the defendant sold out to the plaintiff all his interest in the firm as shown by an invoice of September 1, 1898. The contract was addressed to the plaintiff, signed by the defendant, and read, as follows:

" I will sell you all my interest — same being one undivided one half part — in stock and finished and unfinished carriages of the Hume Carriage Co. at invoice price taken Sept. 1st, 1898, less 5 per cent on finished carriages, together with my good will giving you a right to continue business under the firm name of Hume Carriage Co., if wished.

" You to collect all outstanding bills of every kind, and in case of any failures you will deduct my proportional part, or one half of the loss on same from last payment, I to be notified at the time the amount of each loss, and in case last payment is insufficient to cover loss, I agree to pay you an amount sufficient therefor.

" The amount I have overdrawn in excess to Wm. M. Hume shall be deducted by you in making payment, also the amount of Geo. T. Walker's indebtedness — with interest on the latter — to be deducted.

" After the aforesaid amounts are deducted, leaving the amount due me as per invoice, $29,300.50.

" Payments to be made as follows :

" One-fifth of Geo. Walker's net interest in said firm to be paid said Walker in cash, less $1,000.00, which shall be applied to a $4,000.00 note held against said Walker by James Hume. One-fifth to be paid by 4 mos. note, without interest less $1,000.00 to be paid or applied to the said $4,000.00 note held by James Hume. One-fifth to be paid by a 5 mos. note, without interest less $1,000.00 to be paid or applied to $4,000.00 note held by James Hume. One-fifth to be paid by a 6 mos. note, without interest less $1,000.00 to be applied to said $4,000.00 note held by James Hume, and interest due on said note to date. The balance shall remain an open account, without interest, for one year, and after deducting the afore-mentioned losses you to pay the balance in cash.

" The books and accounts to be and remain in possession of Wm. M. Hume."

The invoice of September 1, 1898, named in the contract contained in the list of assets the item " Bills owing us, $54,943.58." The bill alleged, that these bills were not only for carriages actually sold, but also for carriages that had been consigned for sale, and out of said $54,943.58 bills owing the Hume Carriage Company, $38,253.94 were bills thus owing for carriages that had been consigned for sale ; and that such consignees were properly considered as the purchasers, subject only to the understanding that they were neither the owners of the carriages consigned nor liable to pay for them until they had succeeded in finding a purchaser, inasmuch as the consignees had a right to sell as principals in their own name, to such parties, at such prices, and on such terms as they saw fit, and the carriages so consigned were invoiced to such consignees at fixed prices, and on a sale by the consignee the consignee himself became the purchaser and principal debtor for the carriages so consigned ; that accordingly in the agreement and sale of October 6, 1898, these bills were treated as bills owing the company.; that if the carriages that had thus been consigned had been treated as carriages of the Hume Carriage Company, and the five per cent reduction allowed thereon, the amount due the defendant would and should have been several thousand dollars less than agreed ; and if the carriages thus consigned had been treated as carriages of the Hume Carriage Company, and included at practically cost price, as were all carriages included as such, the amount due the defendant would and should have been many thousands of dollars less ; that they were not so treated, and no attempt was made either on September 1, or on October 6, to ascertain what carriages so consigned had or had not actually been sold by the consignees respectively ; that on the contrary, for the purposes of the invoice of September 1, and of the agreement and sale of October 6, all the carriages so consigned were treated as in effect sold and the whole account in every instance as an outstanding bill ; and that such treatment was in effect a part of the agreement between the defendant and the plaintiff, and alleged that the defendant was estopped to deny the validity of such treatment.

The bill further alleged, that on July 17, 1899, one Gilbert, doing business under the firm name and style of the Gilbert Carriage Company, failed, owing a comparatively large amount on one of the outstanding bills of the Hume Carriage Company; that the plaintiff immediately gave the defendant notice of the failure, and afterwards, at the request of the defendant and on the defendant's agreement to pay half the expense, caused to be replevied certain carriages that had been consigned to the Gilbert Carriage Company for sale and were found in the possession of that company; that while, under the contract and agreement of October 6, 1898, the consignees were treated as purchasers and the accounts as outstanding bills, nevertheless the parties, especially in the provision allowing the last payment to remain an open account without interest for one year as security against losses, took into consideration that the sale to and liability of the consignee was not absolute, but conditional upon his finding a purchaser, and it was not the intention of the parties to change the sale into an absolute sale, or the liability of the consignee into an absolute debt, but rather that the right to replevy the carriages should be preserved in order that the loss might thus be reduced in case of failures; that no provision, however, was made or express understanding had as to how such replevied carriages should be disposed of or the amount of the loss ascertained in case of any such failure and consequent replevin; that hence out of the failure of the Gilbert Carriage Company and the replevin of the carriages there had arisen a complication and controversy which the defendant and the plaintiff had been unable to adjust amicably, and such that the rights and equities of the parties could not be adequately and completely protected and adjusted in an action at law, but only in equity, permitting a sale of the replevied carriages under the order and direction of the court, and the ascertainment of the net loss on the Gilbert Carriage Company bill, one half of which the defendant agreed to stand.

The bill also alleged that, as the plaintiff was informed and believed, the defendant by mistake erroneously stated the amount of the defendant's net interest in the firm, as shown by the invoice of September 1, 1898, to be $29,300.50, and further failed to take out in any form the five per cent on finished carriages,

as agreed; that the plaintiff, being unfamiliar with the figures, and knowing that the defendant was familiar with them, believed the figures to be as stated by the defendant; that it was only recently, and after the making of the payments named, that the plaintiff discovered the mistake, and that the plaintiff had accordingly overpaid the defendant.

The bill also alleged, that the defendant had brought an action at law against the plaintiff on the contract, which action was pending.

The bill prayed, (1) for an accounting, (2) that the replevied carriages might be sold under order of the court and the plaintiff from the proceeds reimbursed for the expenses of replevying the carriages and the balance divided, (3) that the defendant might be ordered to return the amount overpaid by the plaintiff by reason of the defendant's failure to deduct five per cent on finished carriages, (4) that an injunction might be issued to restrain the defendant from further prosecuting his action at law on the contract, and (5) for further relief.

The case was argued at the bar in November, 1901, and afterwards was submitted on briefs to all the justices.

*C. H. Hanson*, for the plaintiff.

*W. H. Niles*, for the defendant.

HOLMES, C. J.    This bill is not like those where there has been a mistake in settling partnership accounts and a note given for the balance.    The plaintiff alleges no mistake either in the substance of the contract or in the invoice, and he seeks no reformation of either document.    On the contrary he says that it was part of the understanding that carriages in the hands of commission houses, although not sold, should be included in "bills owing us."    No note has been given and no mistake of any kind is alleged, except that in estimating the amount due to the defendant under his contract and invoice as agreed they forgot to deduct five per cent as stipulated on finished carriages. If the plaintiff is right, that sum will be deducted from the amount remaining due under the contract.    The plaintiff alleges in the bill that this is matter which may be proved by parol, and this may be true, because the express statement of the mode of computation and the invoice must make the mistake in the figured total apparent; but at all events no reformation is asked.

The real grievance is something which the plaintiff himself alleges to have been contemplated when the contract was made. The plaintiff and defendant have had to replevy from commission men carriages which are charged for under " Bills owing us." This, the plaintiff says, was contemplated and was to be counted as a " loss " under the contract. If so, it will be allowed for in the defendant's suit for the balance alleged to be due to him. The bill prays among other things for an account but discloses no need of equitable relief on that ground. Taking the bill on demurrer, we must assume that it expresses the plaintiff's case as he is content to leave it. He has not asked to amend, and the bill has been dismissed. It is only fair that he should be held exactly to his pleading, and, as the case stands, we are not prepared to say that the judge of the Superior Court was wrong.

*Bill dismissed.*